UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY NGUYEN, | Case No.:  15cv758-LAB (RBB) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL TESTIMONY AT DEPOSITION AND FOR SANCTIONS [ECF NO. 56] AND GRANTING IN PART REQUEST FOR A PROTECTIVE ORDER [ECF NO. 57]** |
| v. | |
| LVNV FUNDING, LLC; MICHAEL S. HUNT; JANALIE A. HENRIQUES, | |
| Defendants. | |

On October 27, 2016, Plaintiff Tony Nguyen filed a "Motion to Compel Testimony at Deposition and for Sanctions" (the "Motion to Compel") with a Memorandum of Points and Authorities, a declaration of Stephen G. Recordon, a declaration of Clinton Rooney, and several exhibits [ECF No. 56].  Defendants Michael S. Hunt and Janalie A. Henriques filed a "Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Compel Deposition Testimony and for Sanctions; Request for a Protective Order" (the "Opposition") on November 30, 2016, with a declaration of Tomio B. Narita and multiple exhibits [ECF No. 57].  There, the Defendants request a protective order preventing further deposition questions that seek information protected by the attorney-client privilege and the work-product doctrine.  (Opp'n 12-13, ECF No. 57.)  On

1

December 7, 2016, Nguyen filed a Reply with a declaration of Stephen G. Recordon [ECF No. 58].  For the reasons discussed below, Plaintiff's Motion to Compel [ECF No. 56] is **GRANTED in part and DENIED in part**, and Defendants' request for a protective order [ECF No. 57] is **GRANTED in part**.

## I.  FACTUAL BACKGROUND

Nguyen filed his lawsuit against Defendants LVNV Funding, LLC; Michael S. Hunt; and Janalie A. Henriques on April 7, 2015.  (Compl. 1, ECF No. 1.)[1]  In his First Amended Complaint, Plaintiff asserts claims against the three Defendants for violations of the Fair Debt Collection Practices Act ("FDCPA") and the Rosenthal Act.  (First Am. Compl. 5-6, ECF No. 39.)  Nguyen contends that on April 17, 2014, Hunt and Henriques filed a complaint against him in San Diego Superior Court on behalf of LVNV.  (Id. at 3.)  In the state court action, Hunt and Henriques alleged that LVNV was the assignee of a debt owed by Plaintiff and that LVNV had enforceable claims against Nguyen.  (Id. at 4.)  Plaintiff maintains that the claims against him were time-barred and unenforceable.  (Id.)  He seeks actual damages, statutory damages, litigation costs, and attorney's fees.  (Id. at 6-7.)

## II.  PROCEDURAL BACKGROUND

Nguyen filed his First Amended Complaint on April 7, 2016 [ECF No. 39].  United States District Court Judge Larry Alan Burns consolidated this case with a related case involving the same parties on April 20, 2016 [ECF No. 43], and the Defendants answered shortly after [ECF Nos. 44, 45, 46].  Defendants Hunt and Henriques were deposed on September 28, 2016.  (Mot. Compel 2, ECF No. 56.)  Several times during the depositions, defense counsel objected to questions by Plaintiff's counsel and instructed his clients not to answer.  (Id. Attach. #1 Mem. P. & A. 7-14.)  Subsequent

---

[1]  The Court will cite to documents as paginated on the electronic case filing system.

communications between counsel were unsuccessful in resolving these issues, (id. at 14-15), and the Motion to Compel was filed on October 27, 2016 [ECF No. 56].

### III.  DISCUSSION

**A.**   **Plaintiff's Motion to Compel**

It is well established that a party may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).  Relevant information need not be admissible at trial to be discoverable.  Id.  Relevance is construed broadly to include any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that may be in the case.  See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350-51 (1978) (footnote omitted) (discussing relevance to a claim or defense, although decided under 1978 version of Rule 26 that authorized discovery relevant to the subject matter of the action (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947))).  Rule 37 of the Federal Rules of Civil Procedure enables the propounding party to bring a motion to compel responses to discovery.  Fed. R. Civ. P. 37(a)(3)(B).  The party opposing discovery bears the burden of resisting disclosure.  Miller v. Pancucci, 141 F.R.D. 292, 299 (C.D. Cal. 1992).

Under Federal Rule of Civil Procedure 30(a)(1), "[a] party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2)."  Fed. R. Civ. P. 30(a)(1).  Rule 30(c)(2) provides the following guidance regarding objections during a deposition:

> An objection at the time of the examination -- whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition -- must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection.  An objection must be stated concisely in a nonargumentative and nonsuggestive manner.

Id. 30(c)(2).  "As a general rule, 'instructions not to answer questions at a deposition are improper.'"  Cohen v. Trump, Civil No. 13–CV–2519–GPC (WVG), 2015 WL 2406094, at *1 (S.D. Cal. May 19, 2015) (quoting Detoy v. City and Cty. of San Francisco, 196

F.R.D. 362, 365 (N.D. Cal. 2000)).  "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  Fed. R. Civ. P. 30(c)(2).  "If a party believes that a particular question asked of a deponent is improper for any other reason, that party may object; however, the examination still proceeds; the testimony is taken subject to any objection."  Mendez v. R+L Carriers, Inc., No. CV 11–02478–CW (JSC), 2012 WL 1535756, at *1 (N.D. Cal. Apr. 30, 2012) (citations omitted) (internal quotation marks omitted).

This is the case even when deposition questions appear to seek irrelevant information.  See 7 James Wm. Moore et al., Moore's Federal Practice § 30.43[2], at 30-89 (3d ed. 2016).

> If deposing counsel engages in irrelevant or repetitious questioning, the appropriate course for opposing counsel is to enter an objection.  The witness may then answer the question.  If the answer is offered at trial, opposing counsel may then renew the objection and obtain a ruling from the court.  If deposing counsel persists in irrelevant or repetitious questioning after objection, opposing counsel may seek a protective order or sanctions from the court.  However, counsel does not have the right to decide the issue unilaterally by instructing the witness not to answer.

Id. (footnote omitted); see Pilates, Inc. v. Georgetown Bodyworks Deep Muscle Massage Centers, Inc., 201 F.R.D. 261, 261 n.1 (D.D.C. 2000) (ordering the deponent to be redeposed after counsel improperly instructed the witness not to answer several questions).

Nguyen asserts there were three instances during the depositions of Michael Hunt and Janalie Henriques where defense counsel improperly instructed his clients not to answer questions.  (Mot. Compel Attach. #1 Mem. P. & A. 7-14, ECF No. 56.)  The Court addresses these instances separately.

//

//

//

4

1. **Questions to Defendant Hunt concerning California Code of Civil Procedure section 395(b)**

Plaintiff first complains about the following exchanges during Hunt's deposition:

Q  Mr. Hunt, if you would go to the second page of Exhibit 4 [Request for Entry of Default and Clerk's Judgment].  Under Paragraph 5 there are three subparagraphs, A, B, and C. On this one, C, you can check a box on whether or not an obligation is "for goods, services, loans, or extensions of credit subject to Code of Civil Procedure 395(b)." Does Hunt & Henriques undertake an inquiry before filing a request for default to make sure that the obligation at issue is subject to Code of Civil Procedure 395(b)?

MR. NARITA:  Well, object to the form.  He didn't sign this. He didn't prepare it.

BY MR. ROONEY:

Q  My question is more generally.  When Hunt & Henriques files requests for default, do they perform an inquiry prior to checking that box?

MR. NARITA:  Don't answer that.

MR. ROONEY:  You're going to instruct him not to answer that?

MR. NARITA:  Yes.

MR. ROONEY:  Okay.  We'll be speaking to Judge Brooks shortly.

MR. NARITA:  That's fine.  It's not likely to lead to the discovery of admissible evidence in this case.

MR. ROONEY:  I'm sure you know --

MR. NARITA:  It's being asked solely for the purposes of harassment or annoyance.

MR. ROONEY:  I am sure -- (a) I dispute that; (b) I'm sure you know relevance is no basis to refuse to answer.  And a sanctionable behavior.

1          MR. NARITA:  So go ahead.

2     BY MR. ROONEY:

3          Q  Mr. Hunt, are you going to answer that question?

4          A  No.

6     . . . .

7     BY MR. ROONEY:

8          Q  Mr. Hunt, just to clarify, are you refusing to testify regarding Page
2, Subsection 5, Subparagraph c of this form, Hunt & Henriques's
procedures regarding that box?

          MR. NARITA:  You haven't asked him a question. Don't
answer that.  Do you have a question?  There's no question pending.

          MR. ROONEY:  That is a question.

     BY MR. ROONEY:

          Q  Are you refusing to testify regarding this issue, Hunt &
Henriques's policies and procedures regarding that box?  Hunt & Henriques
determines whether or not an account is subject to Code of Civil Procedure,
Section 395(b)?

          MR. NARITA: We're not going to have him --

          MR. ROONEY: I'm not asking you.

          MR. NARITA: The answer is, yes, he's not going to testify to
that.

          MR. ROONEY: He can answer that.

     BY MR. ROONEY:

          Q  Are you going to testify to that?

          A  No.

     . . . .

6

Q  Okay.  Does Hunt & Henriques provide any training to its attorneys on how to ascertain whether a debt is subject to Code of Civil Procedure 395(b)?

MR. MOHANDESI:  Vague as to time.

MR. ROONEY:  Now.

MR. NARITA:  Don't answer that.  Has nothing to do with your case.

THE WITNESS:  I'm not going to answer it.

BY MR. ROONEY:

Q  You're not going to answer it.  Okay.

(Id. Attach. #3 Ex. C, at 12-14, 21.)

Nguyen indicates that after these exchanges and subsequent objections, counsel for Hunt "attempted to instruct Plaintiff's counsel to only ask questions regarding acts that took place prior to the filing of the state court complaints at issue."  (Id. Attach. #1 Mem. P. & A. 9.)  Nguyen asserts that Hunt, an experienced attorney, refused to testify on this topic.  (Id.)  Contending that questions regarding compliance with section 395(b) are relevant, Plaintiff states, "As Defendants routinely file Requests for Default in California, Defendants routinely state under penalty of perjury that the debts they file suit to collect are subject to California Code of Civil Procedure §395(b)."  (Id. at 19.)  "This means that Defendants routinely tells [sic] the California Court system that they have made an inquiry into whether or not the debt at issue was incurred for 'personal, family or household use' and have sufficient information to make a conclusion in that regard."  (Id.)  Nguyen asserts that in their operative answers, Defendants denied that they could tell whether Plaintiff's debt was incurred for household, family, or personal purposes, "despite the fact that Defendants filed two Requests for Default in the state court actions at issue, claiming the opposite."  (Id.)  Nguyen explains that one of the elements of his

7

FDCPA claim is that the underlying debt arose from a personal, family, or household purpose, which is similar to the language in section 395(b).  (Id.)  He argues that this makes questions regarding compliance with this section relevant.

> Mr. Narita drafted answers in this action denying that Defendants were capable of ascertaining whether the debts at issue were incurred for a "personal, family or household purpose."  Plaintiff is entitled in inquire as to how, precisely, Defendants made the opposite claim, under penalty of perjury, to the state court.  It is clear why Mr. Narita wants to limit Plaintiff's inquiry into this area:  it is not because the claim is relevant, but precisely because this inquiry is not only relevant to Plaintiff's claim, but exposes the lies in Defendants' answers.

(Id. at 19-20.)

Defendants respond that "Evidence Regarding The Policies And Procedures Used By The Hunt & Henriques Law Firm When Filing Requests For Entry Of Default Has No Bearing On The Claims Asserted By Nguyen And Questioning On The Topic May Be Designed To Invade The Attorney Client Privilege Or To Obtain Work Product[.]" (Opp'n 6, ECF No. 57.)  Defendant Hunt did not sign the requests for default against Plaintiff, (id. (citation omitted)), and he asserts that Nguyen's arguments regarding relevance lack merit, (id.).  The Defendant maintains that only Plaintiff would know whether the debt was incurred for a personal, family, or household purpose.  (Id.)  He then makes six arguments why further deposition testimony on this topic should not be ordered.  (Id. at 6-9.)

Defendant Hunt first contends that because the alleged violations of the FDCPA occurred when the state lawsuits against Nguyen were filed, information regarding how the law firm of Hunt & Henriques subsequently prepared and filed requests for default in those lawsuits is not relevant.  (Id. at 6-7.)  Second, the Defendant argues that because Nguyen has not asserted claims against Hunt and Henriques's law firm, he is not entitled to ask questions regarding the policies and procedures of the firm.  (Id. at 7.)  "As such, Nguyen's line of questioning directed at Mr. Hunt regarding the Hunt & Henriques law firm's policies and procedures was intended to harass, annoy, burden and inconvenience

Mr. Hunt."  (Id.)  Third, Hunt states that if Plaintiff is trying to prove that the Defendants treated his obligations as though they were subject to the FDCPA, this is irrelevant under Ninth Circuit law.  (Id. at 7-8 (citing Slenk v. Transworld Sys., Inc., 236 F.3d 1072, 1074-76 (9th Cir. 2001).)

For his fourth argument, Defendant Hunt asserts that whether attorneys at the law firm submit declarations to show that they understand that obligations are subject to section 395(b) is irrelevant.  (Id. at 8.)  "This suggests, at most, that those attorneys understand the creditor 'intended' the money would be used by the borrower primarily for personal, family or household use."  (Id.)  Hunt contends that the intent of the creditor is irrelevant when determining whether a borrower incurred a debt, and that the creditor and collector do not know how the funds are used.  (Id. at 8-9.)  "Only the person or persons who used the credit card will know what the card was used for, and whether the unpaid balance on the card is a 'debt' under the FDCPA."  (Id. at 9 (footnote omitted).)

Fifth, Hunt maintains that Nguyen does not need further testimony from him regarding the procedures used by Defendants' law firm because Plaintiff already questioned Defendant Henriques, who signed the requests for entry of default, on this topic.  (Id. (citation omitted).)  Last, "it appeared that counsel for Nguyen was continuing to press for further testimony on this topic in the hopes that Mr. Hunt will reveal attorney-client privileged information or attorney work product that might bear on some future lawsuit that counsel for Nguyen plan to file."  (Id. (citing id. Attach. #1 Decl. Narita 3-4).)  Defendant concedes that his counsel failed to object to this line of questioning on the basis of attorney-client privilege or the work-product doctrine, but he submits that "it was reasonable to instruct Mr. Hunt not to answer further questions on the subject given the fact that privileged information was sought."  (Id.)

In the Reply, Plaintiff contends that defense counsel "now claims, for the first time, that entire areas of inquiry are protected because Plaintiff might ask a question that Mr. Narita thinks is subject to the attorney-client privilege or the related work product privilege."  (Reply 3, ECF No. 58.)  Nguyen asserts that counsel has not identified any

privileged communication or document, did not produce a privilege log, and did not raise the issue of privilege at the deposition.  (<u>Id.</u> at 4.)  Addressing attorney-client privilege, Plaintiff maintains that no communication, attorney, or client has been identified.  (<u>Id.</u>)  "There is no indication that Defendants consult anyone before they file defaults, and thus no communication is implicit in any question regarding how Defendants file defaults."  (<u>Id.</u> at 5.)  Regarding the work-product doctrine, "Mr. Narita has not identified a single document or tangible things that [were] prepared in anticipation of litigation or for trial."  (<u>Id.</u> at 6.)  Nguyen argues that Defendants' internal policies and oral testimony regarding those policies are not protected by the work-product doctrine.  (<u>Id.</u>)

Turning to relevance, Plaintiff asserts that Defendants' claim that section 395(b) only concerns the intent of the creditor is false.  (<u>Id.</u>)  Nguyen also contends that this argument misses the point.  (<u>Id.</u>)  "[T]he inquiry that one would undertake to find out whether credit was extended for a personal purpose is likely to be the same or very similar to the inquiry one would undertake to find out whether the credit was actually used for that same purpose."  (<u>Id.</u>)  Nguyen also makes a new argument in his Reply.  He asserts that the deposition questions also relate to compliance with section 1788.58(a)(2) of the California Civil Code which addresses required allegations for an action brought by a debt buyer on a consumer debt.  (<u>See id.</u> at 7.)  Plaintiff moreover indicates that relevance was not a legitimate basis for Defendants' counsel to instruct Hunt not to testify on this topic and that this is sanctionable conduct.  (<u>Id.</u>)

As a preliminary matter, defense counsel did not object to the deposition questions on the basis of attorney-client privilege or the work-product doctrine.  (<u>See</u> Mot. Compel Attach. #3 Ex. C, at 12-14, 21, ECF No. 56.)  "[T]he privilege objection must be made to avoid waiver; it implicates substantive rights of the party apart from the litigation; and it serves to prevent depositions from becoming tools for abuse."  7 James Wm. Moore et al., <u>Moore's Federal Practice</u> § 30.43[2], at 30-90; <u>accord</u> <u>Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B</u>, 230 F.R.D. 398, 422 (D. Md. 2005); <u>Moloney v. United States</u>, 204 F.R.D. 16, 20-21 (D. Mass. 2001).

10

Counsel for Defendant Hunt did not raise either the attorney-client privilege or attorney work-product as the basis for an objection to questions from Plaintiff's counsel. Belated attempts to do so after the fact have been disapproved by the courts.

> Having failed to assert the privileges timely, any attempt to do so now [in opposition to a motion to compel] violates the mandate of Rule 26(b)(5) to "make the claim expressly" and of Rule 30(d)(1) that an objection "be stated concisely". Moreover, because these privileges were never raised at the deposition, the nature of the conversations withheld were not described to enable plaintiff's counsel to assess the applicability of the privileges as provided by the rules, nor was plaintiff's counsel given the opportunity to establish a meaningful record for the court to evaluate the privilege claims.

Moloney, 204 F.R.D. at 21. Hunt cannot assert one objection at the deposition, improperly refuse to answer questions, and thereafter research and claim that Plaintiff's Motion to Compel should be denied because the questions sought privileged communications. See id. "Such conduct most assuredly circumvents both the letter and the spirit of Rules 26(b)(5) and 30(d)(1)." Id.; accord Hill v. Waste Mgmt, No. 1:10-cv-0033, 2011 U.S. Dist. LEXIS 88368, at *8 (M.D. Tenn. Aug. 9, 2011) ("[A] party cannot assert one privilege at the deposition and then assert different privileges or other grounds in [opposition to] a motion to compel the testimony at issue." (citing Moloney, 204 F.R.D. at 20-21)). Consequently, these objections have been waived. See Cason-Merenda v. VHS of Michigan, Inc., No. 06–15601, 2013 WL 5449159, at *3 (E.D. Mich. Sept. 30, 2013) (footnote omitted) ("[A] failure to object to deposition questions or testimony on grounds of attorney-client privilege operates to waive a claim of privilege as to this testimony." (citing Donaggio v. Arlington Cty., 880 F. Supp. 446, 451 n.5 (E.D. Va. 1995))).

In the Opposition, Defendant Hunt and Defendant Henriques provide the following justification for their lawyer's failure to state these objections on the record:

> At the time of the deposition, counsel for Defendants erred, because he did not clearly articulate the basis for his objections to this line of questioning and for his instructions to the witnesses not to answer the questions. He should have stated that, in addition to harassing the witnesses,

counsel for Nguyen was also seeking privileged information.  Counsel concedes this error in not clearly stating the objection, and he explains in the accompanying [declaration] that it was due in part to his illness at the time of the depositions.  But the result should not change.  There is no basis for directing that further depositions proceed, just to allow questioning that will clearly be improper.

(Opp'n 5, ECF No. 57.)

The Court is not persuaded that Tomio Narita, counsel for Defendants, failed to object on the basis of privilege because of his illness.  The deposition transcript demonstrates that Narita remained active and engaged during the depositions and did not appear to have been affected by his sickness.  (See Mot. Compel Attach. #3 Ex. C, at 11-22, ECF No. 56.)  But even if a waiver of these privileges did not occur, Hunt has not shown how the questions at issue are protected by either the attorney-client privilege or the work-product doctrine.  "The burden of proving the attorney-client or work-product privileges [rests] on the party claiming the privilege."  Hisaw v. Unisys Corp., 134 F.R.D. 151, 153 (W.D. La. 1991).  Defendant Hunt's contention that questions regarding section 395(b) were designed to elicit information protected by these privileges, (Opp'n 9, ECF No. 57), is conclusory and lacking analysis.  These privileges do not apply to the questions at issue.  See Younger Mfg. Co. v. Kaenon, Inc., 247 F.R.D. 586, 588 (C.D. Cal. 2007) ("Kaenon has not met its burden to show plaintiff's deposition of Darren is for harassment or that all the information plaintiff seeks from Darren is protected by the attorney-client privilege or work product doctrine.").

Here, the gravamen of Plaintiff's Amended Complaint is that in violation of the Federal Debt Collection Practices Act, Defendants improperly used the state court process to attempt to collect consumer debts that were time-barred by the applicable statute of limitations.  (See First Am. Compl 3-7, ECF No. 39.)  Among other things, the Defendants respond that any violation of the FDCPA was the result of a bona fide error and that they acted in good faith.  (See Answer First Am. Compl. 6-7, ECF No. 45.)  The Court agrees with the Plaintiff that the testimony sought is relevant to his claims.  It is

true that California Code of Civil Procedure section 395(b) is a provision of a venue statute that concerns the proper county in which to file certain lawsuits in superior court. See Cal. Civ. Proc. Code § 395(b) (West 2004).  But whether Hunt's law firm filed the underlying state actions in the proper county is relevant to the claims and defenses in this case.  See Fed. R. Civ. P. 26(b)(1).  As a result, the Motion to Compel is **GRANTED** as to inquiries to determine whether the underlying state court actions fall under the venue provisions of California Code of Civil Procedure section 395(b).

Finally, courts generally will not consider arguments raised for the first time in a reply brief.  See Antoninetti v. Chipotle Mexican Grill, Inc., Civil No. 05CV1660-J (WMc), 2007 U.S. Dist. LEXIS 62288, at *7-8 (S.D. Cal. Aug. 23, 2007).  Thus, Plaintiff's belated argument that the deposition questions are relevant to whether Defendants complied with section 1788.58(a)(2) of the California Civil Code will not be considered.

### 2. Questions to Hunt about the number of debt-collection attorneys in Defendants' firm

Plaintiff next asserts that counsel for Defendants improperly instructed Hunt not to answer questions regarding the number of debt-collection attorneys who work at Defendants' law firm during the following exchange:

> Q  Now, as we sit here today, how many attorneys does Hunt & Henriques currently employ?

> A  As we sit here today?

> Q  Yes.

> A  Eleven.

> Q  And is that the same number of attorneys Hunt & Henriques had in 2014?

> A  I can't say, as I sit here.

13

1      Q  At that time, do you know if you had at least five?

2      A  Yes.

3      Q  Did you have at least seven?

4

5      A  As I sit here, I--I'd be happy to look that information up for you,

6   but I do not -- as I sit here, can give you the specific number.

7      Q  And those attorneys -- well, let's talk about today first.  Attorneys

8   working for Hunt & Henriques today, they all file collection lawsuits?

9           MR. NARITA:  Object to the form.

10          THE WITNESS:  As we sit here today?

11

12  BY MR. ROONEY:

13     Q  Yes.

14     A  No, I don't believe all of them do.

15     Q  How many of them don't file collection lawsuits?

16

17          MR. NARITA:  This has nothing to do with your case. Don't

18  answer that.  I'm instructing him not to answer.

19  BY MR. ROONEY:

20     Q  Are you going to answer or not?

21

22     A  No.

23     Q  Okay. How many of the attorneys currently employed by Hunt &

24  Henriques do file collection lawsuits?

25          MR. NARITA:  Don't answer that either.

26

27          THE WITNESS:  No.

28  //

14

BY MR. ROONEY:

    Q  Just to clarify, you're refusing to answer?

    A  Yes.

    Q  Okay.  What are the duties of the attorneys currently employed by Hunt & Henriques?

      MR. NARITA:  That's the same -- that's the same line of inquiry. We're talking about what happened prior to the filing of two lawsuits back in 2015.  So how they're staffed today –

      MR. ROONEY:  You don't get to limit --

      MR. NARITA:  Yes, I do.

      MR. ROONEY:  You don't get to limit the scope of my inquiry.

      MR. NARITA:  Actually, I do.

      MR. ROONEY:  No, you don't.

      MR. NARITA:  I get to prevent you from abusing, harassing and wasting time, which is what you're doing.  That's my objection, and I'm instructing him not to answer on that basis.

      MR. ROONEY:  I understand.

BY MR. ROONEY:

    Q  Are you going to follow that instruction?

    A  I am.

(Mot. Compel Attach. #3 Ex. C, at 17-20, ECF No. 56.)

    Explaining the relevance of this line of questioning, Nguyen states, "This inquiry [of Defendant Hunt] goes to one of the elements of Plaintiff's FDCPA claims:  whether or not Defendants regularly collect debts, either directly or through their employees or

agents." (Id. Attach. #1 Mem. P. & A. 17.)  He contends that Defendants are subject to the FDCPA if they regularly file debt-collection lawsuits.  (Id.)  Nguyen maintains that a showing of the number of debt-collection lawyers at Defendants' law firm would demonstrate how regularly they file debt-collection actions, and he contends that Hunt and Henriques denied in their answer that they are debt collectors.  (Id. at 18 (citation omitted).)

Defendants respond that "Evidence Regarding The Number Of Attorneys Who Are Currently Employed By The Hunt & Henriques Law Firm Who File Collection Lawsuits Has No Bearing On Nguyen's Claims And Can Only Be Designed To Elicit Privileged Matters[.]" (Opp'n 11, ECF No. 57.)  They assert that because the collection actions against Plaintiff were filed two years ago, information regarding the current number of attorneys at Defendants' law firm is not relevant.  (Id.)  Defendant Michael Hunt argues that Nguyen has not sued the law firm, nor has he explained why he is entitled to information regarding the number of attorneys currently at the firm.  (Id. at 11-12.)  "The only reasonable inference is that Nguyen's counsel is pushing for this testimony so they can attempt to set up their next lawsuit by invading the attorney client privilege or by obtaining attorney work product concerning the Hunt & Henriques law firm's efforts to comply with the FDCPA on behalf of its current clients." (Id. at 12.)  As a result, defense counsel's instruction that Hunt not answer these questions was reasonable.  (Id.)  Counsel for Hunt concedes, however, that he "erred by not clearly articulating the basis for the instruction at the time of the questioning." (Id.)

In the Reply, Plaintiff asserts that the testimony sought is not privileged and is relevant.  (Reply 9, ECF No. 58.)  He contends that he is entitled to know how many attorneys are currently employed and were previously employed at Defendants' law firm because both Hunt and Henriques claim that they are not debt collectors.  (Id.)  "If Defendants hire attorneys to file debt collection lawsuits, and otherwise collect debts by sending letters and communicating with debtors, then Defendants regularly collect debts." (Id.)  Nguyen maintains that the current and past behavior of the individual

16

Defendants shows this.  (Id.)  Plaintiff points out that "[he] was similarly precluded from asking how many attorneys were employed by Defendants to collect debts two years ago."  (Id.)  Addressing the privilege claims, Nguyen argues that defense counsel has not identified communications or documents that are subject to privilege and complains that "[s]peculation that Plaintiff could conceivably ask a privileged question is no basis to refuse to testify regarding topics that Defendants dislike."  (Id. at 10.)

Defendants' belated and conclusory assertion of privilege is not compelling.  The Court again finds that counsel for Defendants did not object to this line of questioning on the basis of attorney-client privilege or the work-product doctrine.  (See Mot. Compel Attach. #3 Ex. C, at 17-20, ECF No. 56.)  Consequently, these objections have been waived.  But even if the privilege claims were not waived, neither Defendant Hunt nor Henriques provide any analysis regarding the applicability of the attorney-client privilege or the work-product doctrine.  It is their burden to show that the privileges apply, see Hisaw, 134 F.R.D. at 153, and they have not done so.  The Court cannot conclude that these privileges shield Defendant Hunt from answering the questions at issue.

Turning to relevance, to state a claim under the FDCPA a plaintiff must allege, among other things, that "the defendant attempting to collect the debt qualifies as a 'debt collector[]' . . . ."  Murphy v. Atradius Collections, Inc., Case No.: 3:16-cv-00380-GPC-MDD, 2016 WL 1668538, at *3 (S.D. Cal. Apr. 27, 2016) (citations omitted).  A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C.A. § 1692a(6).  Because Plaintiff brings a claim against Defendant Hunt and Defendant Henriques under the FDCPA, (First Am. Compl. 5, ECF No. 39), he will have to prove that these Defendants are debt collectors, see Murphy, 2016 WL 1668538, at *3.  Questions regarding the number of debt-collection attorneys employed by them at the time the underlying state court actions were filed through the date of the deposition are relevant to determining whether the

Defendants were "debt collectors" at the time.  See 15 U.S.C.A. § 1692a(6).  As a result, Plaintiff's Motion to Compel testimony from Defendant Hunt as to questions regarding the number of debt-collection attorneys employed at Hunt and Henriques's law firm is **GRANTED**.

> **3.**    **Questions to Defendants Michael Hunt and Janalie Henriques about compliance with and training regarding the California Fair Debt Buying Practices Act**

Nguyen additionally complains about the following exchange during Hunt's deposition when he was asked about the training provided by Defendants' law firm on the California Fair Debt Buying Practices Act:

> Q  And has Hunt & Henriques ever provided training to its attorneys regarding the Fair Debt Buyers' Collection Practices Act, I think it's called, Civil Code Section 1788.50 on forward?
>
> A  That act had no application to these two accounts.
>
> Q  But that's not my question.
>
> MR. ROONEY:  Could you read back the question.
>
> THE WITNESS:  That was my answer.
>
> MR. ROONEY:  That's not an answer.  It's nonresponsive. Could you read back the question, please.  (Record read.)
>
> MR. NARITA:  He's answered.
>
> MR. ROONEY:  I didn't get a "yes" or a "no."
>
> MR. NARITA:  Well, you don't get to tell him how to answer. He gave you an answer.
>
> MR. ROONEY:  No, he didn't answer.  He gave a nonresponsive answer.

//

1    BY MR. ROONEY:

2        Q  In fact, Mr. Hunt, are you going to answer that question?

3            MR. NARITA:  He did.  Ask a different one.

4

5            MR. ROONEY:  He did not.

6            MR. NARITA:  Ask a different one.

7

8            MR. ROONEY:  He can answer for himself.

9            THE WITNESS:  I answered the question.

10   BY MR. ROONEY:

11

12       Q  So you're not going to provide any further answer?

13       A  No.

14   (Mot. Compel Attach. #1 Mem. P. & A. 12, ECF No. 56 (citations omitted).)  Plaintiff

15   asserts that neither Hunt nor his counsel asserted any privilege during this exchange and

16   did not stop the deposition so that they could seek a protective order or assert that a prior

17   order from the Court prohibited these questions.  (See id. at 12.)

18       Nguyen further complains that Defendant Henriques also refused to testify

19   regarding Defendants' compliance with the California Fair Debt Buying Practices Act.

20       Q  Today -- not in 2014 but now -- does Hunt & Henriques file
21       lawsuits that are subject to the Fair Debt Collection Buyer -- Fair Debt
         Buyers' Collection Practices Act?  I'm talking about Civil Code Section
22       1788.50 on forward.

23
24       A  Yes.

25       Q  Okay.  As part of the collection lawsuits that & Henriques files
         nowadays -- they're subject to act -- does Hunt & Henriques under- --
26       undertake any inquiry to find out whether the debts they're suing on are
27       subject to that act?

28

1    MR. NARITA:  Objection.  That question has nothing to do
2    with the claims that you're pursuing in this case.  And, therefore –

3    MR. ROONEY:  We're getting to speaking objections.  If you
4    want to make an appropriate relevance objection, feel free.

5    MR. NARITA:  Well, I'm about to instruct the witness not to
6    answer.  Do you want to know why or do you not want to know?

7    MR. ROONEY:  I don't know if it really matters that much.

8    MR. NARITA:  Don't answer that question.
9
10    MR. ROONEY:  Okay.

11   BY MR. ROONEY:

12   Q  And are you going to follow your attorney's instruction?
13
14   A  Yes, I am.

15    MR. ROONEY:  Let's do this.  I intend to inquire of Ms.
16   Henriques regarding Hunt & Henriques's policies and procedures to comply
17   with Civil Code Section 1788.50 on forward.  Do you intend to instruct her
     not to answer any questions on that topic?

18
19    MR. NARITA:  Yes.

20   BY MR. ROONEY:

21   Q  Will you answer any questions on that topic?

22   A  Not against my attorney's advice.
23
24    MR. ROONEY:  Okay.  As we said before, in the earlier
25   deposition of Mr. Hunt, we don't believe you have any basis to do so.  We
     intend to move to compel.  However, today let's not waste a lot of time
26   going back and forth on it.  As long as we understand the topic which is at
     issue.
27

28

15cv758-LAB (RBB)

(<u>Id.</u> Attach. #3 Ex. C, at 39-41.)  Plaintiff asserts that neither Henriques nor Narita asserted any privilege during this line of questioning, nor did they stop the deposition to seek a protective order or assert that the Court has prohibited this line of questioning.  (<u>Id.</u> Attach. #1 Mem. P. & A. 14.)

Nguyen argues that the California Fair Debt Buying Practices Act and the Rosenthal Act contain some of the same definitions, including the definition of a "consumer credit transaction."  (<u>Id.</u> at 20.)  He contends that when Defendants file collection lawsuits, they are required by law to inquire as to whether the debt is from a consumer credit transaction.  (<u>Id.</u>)  Plaintiff indicates that in Defendants' answers, they "expressly denied that they could tell whether the debt at issue was incurred for personal, family or household purposes."  (<u>Id.</u>)  Nguyen contends that this assertion must be false if Defendants are complying with the California Fair Debt Buying Practices Act.  (<u>Id.</u>)  Plaintiff argues that whether this statute was in effect when the underlying state claims were filed is irrelevant because Hunt and Henriques filed their answers this year.  (<u>Id.</u> at 21.)  "As Defendants claimed, and continue to claim that now, this year, they cannot ascertain what type of debts are at issue in this action, questions regarding how Defendants comply and train their attorneys to comply with California Civil Code §1788.58(a)(2) are entirely relevant . . . ."  (<u>Id.</u>)

The individual Defendants respond that this information is not relevant to Nguyen's claims and is designed to elicit privileged information.  (Opp'n 10, ECF No. 57.)  They contend that the questions are improper because Plaintiff has not and could not assert a claim against Hunt and Henriques under this statute.  (<u>Id.</u>)  Defendants explain that the underlying accounts were purchased by LVNV in 2010, which means that they are not subject to the statute.  (<u>Id.</u>)  "The only possible reason for this line of questioning is to seek attorney client privileged information or attorney work product that Nguyen's counsel will seek to use in some future lawsuit against a debt buyer client of the Hunt & Henriques firm."  (<u>Id.</u>)  As a result, it was proper for their attorney to instruct Defendants

to not answer these questions, even though counsel failed to articulate privilege as a basis for instructing his clients to not answer.  (<u>Id.</u> at 10, 11.)

In their Opposition, Defendants also contend that "The Court Should Issue A Protective Order Preventing Any Deposition Testimony That Seeks Attorney-Client Privileged Information Or Attorney Work Product."  (Opp'n 12, ECF No. 57.)  They assert that the deposition topics Nguyen seeks to compel are irrelevant and are designed to invade these privileges for the purpose of further litigation.  (<u>Id.</u>)  "As such, there is no reason to grant Nguyen's motion for further deposition testimony."  (<u>Id.</u>)  Defendants argue that their request for a protective order should be granted to prevent further testimony on the topics Plaintiff moves to compel.  (<u>Id.</u>)  Hunt and Henriques explain that good cause exists to grant a protective order because "there is no purpose for retaking the depositions of Mr. Hunt or Ms. Henriques, other than to harass, annoy, burden and inconvenience them and to cause them unnecessary expense."  (<u>Id.</u> at 13.)

In his Reply, Nguyen responds that this information is neither privileged nor irrelevant.  (Reply 7, ECF No. 58.)  Plaintiff asserts that to comply with the California Fair Debt Buying Practices Act, "Defendants must ascertain whether a debt is a debt subject to the California Fair Debt Buying Practices Act <u>and to the Rosenthal Act</u>, one of the two statutes at issue in this action."  (<u>Id.</u>)  Nguyen contends that based on Defendants' answers, they have either lied to this Court or to the state courts where they file collection actions.  (<u>Id.</u>)  Plaintiff further indicates that "[t]his inquiry goes to one of the elements of Plaintiff's claims:  whether in fact Defendants can admit or deny that the debt at issue is subject to the Rosenthal Act, and their factual basis for doing so."  (<u>Id.</u> at 7-8.)  Addressing attorney-client privilege, Nguyen complains that counsel for Defendants has not identified any privileged communications and that none of the information sought would be subject to this privilege.  (<u>Id.</u> at 8.)  Plaintiff similarly argues that counsel for Defendants has not identified any documents that would qualify as work product and disputes the applicability of the work-product doctrine because Nguyen's inquiry

1   regarding Defendants' policies was oral.  (Id.)  In his Reply, Nguyen does not address

2   Defendants' request for a protective order.

3          As was the case above, counsel for Defendants Hunt and Henriques did not object

4   to the questions on the basis of either attorney-client privilege or the work-product

5   doctrine.  (See Mot. Compel Attach. #1 Mem. P. & A. 11-2, ECF No. 56; id. Attach. #3

6   Ex. C, at 39-41.)  These objections have been waived.  Furthermore, Defendants have not

7   explained how the privileges apply to the testimony sought by Plaintiff.  They have not

8   met their burden of showing that the privileges apply.  See Hisaw, 134 F.R.D. at 153.

9          Nevertheless, Nguyen has failed to demonstrate how testimony regarding

10  compliance with and training regarding the inapplicable California Fair Debt Buying

11  Practices Act is relevant to his litigation.  Plaintiff asserts claims under the FDCPA and

12  the Rosenthal Act.  (First Am. Compl. 5-6, ECF No. 39.)  Defendants' compliance with

13  the California Fair Debt Buying Practices Act is not relevant to claims or defenses in this

14  litigation.  See Fed. R. Civ. P. 26(b)(1).  At some point during the course of taking

15  depositions, questions seeking information with limited relevance, or no relevance, cross

16  the line between interrogation that is permitted and interrogation that warrants the

17  issuance of a protective order.  Questions concerning the California Fair Debt Buying

18  Practices Act cross that line.

19         Federal Rule of Civil Procedure 26(c) provides in part that "[t]he court may, for

20  good cause, issue an order to protect a party or person from annoyance, embarrassment,

21  oppression, or undue burden or expense . . . ."  Fed. R. Civ. P. 26(c)(1).  "The burden is

22  on the party seeking a protective order to show good cause therefor."  Antoninetti v.

23  Chipotle Mexican Grill, Inc., No. 06cv2671–BTM (WMc), 2011 WL 8831149, at *1

24  (S.D. Cal. Mar. 17, 2011) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th

25  Cir. 1975)).  Nguyen is not entitled to testimony regarding Defendants' compliance with

26  and training regarding the California Fair Debt Buying Practices Act.  The Motion to

27  Compel is **DENIED** as to this testimony, and Defendants' request for a protective order

28  as to this line of questioning is **GRANTED**.

## B.   Plaintiff's Request for Sanctions

Nguyen contends that sanctions are warranted.  (Mot. Compel Attach. #1 Mem. P. & A. 21, ECF No. 56.)  Citing Federal Rule of Civil Procedure 30(d)(2), Plaintiff asserts that sanctions should be issued because counsel for Defendants "repeatedly instruct[ed] his clients not to answer questions, even though there was no claim of privilege, no break in the deposition in order to file [for] a protective order, and no instruction from the Court impacting the questions asked."  (Id.)  Nguyen argues that Narita should pay costs, attorney's fees, and the expenses for Plaintiff to travel back up to San Jose to complete the deposition.  (Id. at 21-22.)  Nguyen requests sanctions awards in the amounts of $7,850 against Narita under Rule 30 and $9,350 against Narita, Hunt, and Henriques under Rule 37.  (Id. at 22.)

Defendants respond that their counsel should have been clearer that he was objecting on the basis of privilege during the depositions.  (Opp'n 13, ECF No. 57.)  Hunt and Henriques further explain why their lawyer instructed them to not answer questions.

> When counsel for Nguyen refused to discuss the basis for the questions, counsel for Defendants reasonably concluded he was improperly attempting to elicit privileged matters, and that he was deliberately harassing the witnesses.  He reasonably believed that the sole purpose for the continued questioning by counsel for Nguyen was to harass them and to attempt to invade the attorney client privilege and/or work product privilege so he could set Defendants up for some other lawsuit he was planning to file.

(Id. at 13-14.)  They conclude that even if the Court determines that Narita did not articulate a proper basis for instructing them to not answer questions, his conduct was substantially justified.  (Id. at 14.)

In the Reply, Plaintiff asserts that he has now incurred an additional $4,420 in pursuing sanctions.  (Reply 10, ECF No. 58.)

Federal Rule of Civil Procedure 30(d)(2) provides that "[t]he court may impose an appropriate sanction--including the reasonable expenses and attorney's fees incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the

deponent." Fed. R. Civ. P. 30(d)(2).  Instructing a deponent to not answer a question on any basis other than those outlined in Rule 30(c)(2) can be grounds for sanctions under Rule 30(d)(2).  See Layne Christensen Co. v. Bro-Tech Corp., Civil Action No. 09–2381–JWL–GLR, 2011 WL 4688836, at *8 (D. Kan. Oct. 6, 2011) (footnote omitted) ("By directing the deponent not to answer in direct contravention of Rule 30(c)(2), counsel engaged in conduct sanctionable under Rule 30(d)(2)."); cf. Severstal Wheeling Inc. v. WPN Corp., No. 10 Civ. 954(LTS)(GWG), 2012 WL 1982132, at *3 (S.D.N.Y. May 30, 2012) ("[P]laintiffs have shown that Kaplan violated Rule 30(c)(2)'s requirements regarding objections and instructions not to answer.  However, they have not met their burden of showing that the deposition was impeded, delayed, or frustrated in any material sense.  The plaintiffs obtained a wealth of testimony from Kassan.").

In order to be awarded fees and costs, Plaintiff's counsel must establish that the hours expended and their hourly rate are reasonable for similarly situated attorneys in the community.  McCall v. Reed, 157 F. Supp. 3d 1192, 1198 (M.D. Ala. 2015) (citations omitted).  They have not provided this information.  Attorney Recordon states that he spent 22 hours preparing the motion to compel and 10 4/10ths hours preparing the reply memorandum at his regular hourly rate of $425.00 an hour.  (See Mot. Compel Attach. #1 Mem. P. & A. 22, ECF No. 56; Reply Attach. #1 Decl. Recordon 1, ECF No. 58.) Attorney Rooney states that he anticipates spending sixteen hours completing the "second half" of the depositions of Hunt and Henriques, including "travel to and from San Jose and the actual depositions themselves."  (See Mot. Compel Attach. #3 Decl. Rooney 3, ECF No. 56.)  Rooney anticipated that travel costs would be $250.00 and the deposition recording and transcripts would likely cost $1600.00.  (Id.)

It was improper for Narita to instruct Hunt and Henriques to not answer questions on the basis of relevance.  See Fed. R. Civ. P. 30(c)(2).  Nevertheless, the Court finds that defense counsel only impeded the fair examination of Hunt with regard to making jurisdictional allegations under section 395(b) of the California Code of Civil Procedure and the number of debt-collection attorneys employed at Defendants' law firm at the time

the underlying state actions were filed.  As a result, the request for sanctions under Rule 30(d)(2) in connection with Plaintiff's Motion to Compel is **GRANTED in part and DENIED in part**.  Hunt is ordered to submit to a subsequent one hour telephonic deposition during which he may be questioned about these topics with some reasonable followup questions.

Rule 37(a)(5)(C) provides that "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).  The Court will take into account other circumstances in considering an award of attorney's fees in this case.  See also id. 37(a)(5)(A)(iii).

"By the very nature of its language, sanctions imposed under Rule 37 must be left to the sound discretion of the trial judge." O'Connell v. Fernandez–Pol, 542 F. App'x 546, 547-48 (9th Cir. 2013) (citing Craig v. Far West Eng'g Co., 265 F.2d 251, 260 (9th Cir. 1959)).  "[T]he burden of showing substantial justification and special circumstances is on the party being sanctioned.'" Cruz v. Aurora Loan Servs., LLC, Case No. 3:15-cv-00585-LB, 2016 WL 2621795, at *5 (N.D. Cal. May 9, 2016) (quoting Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994)).

Here, the Court is granting the Motion to Compel limited to testimony from Hunt regarding making allegations under section 395(b) of the California Code of Civil Procedure and the number of debt-collection attorneys employed at Defendants' law firm at the time the underlying state actions were filed against Plaintiff.  Having reviewed these lines of questioning in the deposition transcript, it appears that Hunt did not answer the questions from Plaintiff's counsel because of the objections and instructions from his defense counsel.  (See Mot. Compel Attach. #3 Ex. C, at 12-14, 17-21, ECF No. 56.)  As a result, an award of sanctions against Hunt would be unjust.  See Fed. R. Civ. P. 37(a)(5)(A)(iii).  Attorney Narita, however, has not convinced the Court that his improper objections and instructions that Hunt not answer questions regarding section 395 of the California Code of Civil Procedure and the number of debt-collection attorneys at

Defendants' law firm were substantially justified.  Consequently, Nguyen's Motion to Compel as to the request for sanctions under Rule 37 is **GRANTED in part and DENIED in part**.  Counsel for Defendants Hunt and Henriques shall reimburse Plaintiff for his reasonable expenses, including attorney's fees, incurred in bringing the portion of the motion relating to Hunt's testimony regarding the two areas of questioning for which the Motion to Compel is granted.  The scope of relief awarded is also a relevant consideration.  This sanctions award is being assessed against counsel for Defendant Hunt.  Plaintiff may submit a declaration regarding these expenses no later than March 17, 2017.  Defense counsel may file a response on or before March 24, 2017.

## IV.  CONCLUSION

For the reasons discussed, Nguyen's Motion to Compel [ECF No. 56] is **GRANTED in part and DENIED in part**.  The Motion to Compel is **GRANTED** as to questions to Defendant Hunt regarding jurisdictional allegations under section 395 of the California Code of Civil Procedure and the number of debt-collection attorneys employed at Defendants' law firm at the time the underlying state actions were filed against Plaintiff.  Hunt shall submit to a supplemental telephonic deposition limited to these topics no later than March 27, 2017.  The deposition shall not exceed one hour.  The fact discovery deadline in this case is extended to March 27, 2017, for the sole purpose of compliance with this order.  The Motion to Compel is **DENIED** as to all other requests.

The Motion to Compel also seeks sanctions under Rules 30(d)(2) and 37; the request for sanctions is **GRANTED in part and DENIED in part**.  Counsel for Defendants shall reimburse Plaintiff for his reasonable expenses, including attorney's fees, incurred in bringing the portion of the Motion to Compel relating to Hunt's one hour telephonic deposition about jurisdictional allegations under section 395 of the California Code of Civil Procedure and the number of debt-collection attorneys employed at Defendants' law firm at the time the underlying state actions were filed against Nguyen.  Plaintiff shall submit a declaration regarding these expenses no later than March 17,

2017.  Defense counsel may file a responsive brief on or before <u>March 24, 2017</u>.

Defendants' request for a protective order [ECF No. 57] is **GRANTED in part**.

      IT IS SO ORDERED.


DATED:  March 10, 2017

                                       Hon. Ruben B. Brooks
                                       United States Magistrate Judge


cc:    Judge Burns
         All Parties of Record

15cv758-LAB (RBB)